*In re* VETTERLEIN and others, Bankrupts.

(*District Court, S. D. New York.* January 21, 1886.)

BANKRUPTCY—TRUST FUND—LIEN, WHEN LOST—IDENTIFICATION.

V. & Co., in 1864, more than six years before their failure, received certain moneys collected from an insolvent debtor, on behalf of themselves and various other creditors, acting jointly. It was so credited on their books, and their own share and expenses deducted. No attempt was made to trace this fund specifically into the hands of the assignee in bankruptcy, and the circumstances leave no doubt that it was converted by V. & Co. and used in their general business before their failure. *Held,* that no specific lien existed, in favor of the rightful distributees of the fund, in 1864, upon the funds now remaining in the hands of the assignee in bankruptcy.

In Bankruptcy.

*Roger M. Sherman,* for petitioners.

*Jas. K. Hill,* for assignee.

*Geo. E. P. Howard,* for the United States.

BROWN, J. The petitioners ask that the sum of about $3,000, in the hands of the assignee in bankruptcy, remaining on deposit subject to the order of the court, should be applied to pay their claim, on the ground that they had a specific lien upon the fund. Several years before the bankruptcy of Vetterlein & Co., various creditors, including Vetterlein & Co., who had claims against one Solomon, joined together in the endeavor to recover their respective demands. Upwards of $7,200 was recovered, which was received by Vetterlein & Co. for the benefit of all interested. Upon their firm books Vetterlein & Co., in 1864, entered the transaction, "Solomon's estate, in account with Vetterlein & Co.," crediting the same with the cash collected, and deb-

v.26F.no.3—10

iting the account with their own share in the proceeds, with the amounts paid to certain other creditors, and with the expenses of collection. On the first of January, 1868, the credit balance of this account was stated upon their books to amount to $3,014.68. In 1870, Vetterlein & Co. failed, and made a voluntary assignment, under which all their assets then available were collected by the voluntary assignee. Upon proceedings in bankruptcy against the firm, an assignee was appointed, who succeeded in setting aside the voluntary assignment, and in recovering the proceeds of the assets of the firm. The balance now in the assignee's hands is what remains after some dividends, and after payments made to the United States as a preferred creditor.

If a legal lien upon the moneys now remaining exists in favor of the petitioners on account of the deposit of the proceeds of Solomon's estate in 1864, the priority of the United States would be superseded. I have attentively considered the arguments and authorities cited by counsel for the petitioners, and cannot sustain the alleged claim of lien as valid. No attempt has been made to identify the present fund as the remains of the specific deposit in 1864, or to connect this sum with the deposit then made in any other way than by the general benefit to Vetterlein & Co.'s estate through their receipt of the moneys in 1864. So long as that deposit could be identified or specifically traced no doubt a lien upon it would be upheld. But there is no evidence and no probability that any of this deposit specifically came to the hands of the voluntary assignee some six years after that fund was received by the firm; and the assignee in bankruptcy certainly received nothing directly from this specific deposit. No lien could be sustained, therefore, unless the entire *corpus* of the partnership estate could be held legally subject to a lien on account of moneys that had been received years before, impressed with a trust, although the fund had been converted and used in the general business of the firm, and was no longer capable of identification. There is no authority, to my knowledge, that sustains a lien, to such an extent, against the estate of a depositary. It would be incompatible with the well-settled rights of general creditors in numerous familiar cases that are constantly arising out of the transactions of commission houses that do business both on their own account and for consignors. See *Hoyt* v. *Sprague*, 103 U. S. 613, 624, 629.

Without considering the other objections, the motion must be denied.